Herman E. and Mary E. McKINNEY,
Plaintiffs-Appellants,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 76–4260.

United States Court of Appeals,
Fifth Circuit.

June 13, 1978.

Rehearing Denied July 31, 1978.

Douglass D. Hearne, Philip C. Joseph, Austin, Tex., for plaintiffs-appellants.

Jamie C. Boyd, U. S. Atty., San Antonio, Tex., Arthur L. Bailey, Atty., Scott P. Crampton, Asst. Atty. Gen., Tax Div., Gary R. Allen, Atty., Myron C. Baum, Acting Asst. Atty. Gen., Gilbert E. Andrews, Acting Chief, Appellate Section, Richard Farber, Atty., U. S. Dept. of Justice, Washington, D. C., for defendant-appellee.

Before TUTTLE, GEE and FAY, Circuit Judges.

TUTTLE, Circuit Judge:

The taxpayer,[1] Herman E. McKinney, having embezzled the sum of $91,702.06 from his employer, reported and paid taxes on the fund in 1966. He refunded the entire amount in 1969 and now seeks to be made whole tax-wise under the terms of a special statutory relief provision of the Internal Revenue Code, 26 U.S.C. § 1341.

The facts are not in dispute. Over a period of years McKinney, who was employed by the Texas Employment Commission, arranged matters in such a manner that in 1966 he was able to siphon off $91,702.06 of the state's money. Because of the requirements of the federal taxing statutes following the Supreme Court's decision in *James v. United States,* 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961), McKinney reported the embezzled funds as "miscellaneous income" on his 1966 federal income tax return. Subsequently, the embezzlement was discovered, and McKinney was convicted in the state courts of embezzlement. He repaid the embezzled funds in 1969. On his tax return for that year, taxpayer claimed a deduction for this repayment as a trade or business loss, resulting in a reported "net operating loss" for that year. He then claimed a net operating loss carryback deduction for 1966. Alternatively, taxpayer filed a claim for refund for 1969, claiming the benefit of the provisions of § 1341.[2]

The Government does not dispute the taxpayer's entitlement to a deduction for the year 1969, but this does not give him the full benefits that would be enjoyed if he could treat the loss as if it had occurred in 1966, the year of payment. The taxpayer has abandoned his original claim that he is entitled to a carryback of the loss as a "net operating loss," a point decided against him by the trial court. He therefore relies solely on his contention that by the enactment of § 1341, Congress intended that a taxpayer, who reported as income funds acquired by theft or embezzlement, be able to obtain, if required subsequently to refund the amounts, the full benefit of a deduction in the year of repayment that would effectively wipe out the economic loss suffered from the prior payment of taxes on the illegally acquired funds.

In 1954, Congress enacted § 1341 to alleviate perceived inequities created by operation of the so-called "claim-of-right doctrine." The classic formulation of the doctrine is that:

> If a taxpayer receives earnings *under a claim of right and without restriction as to its disposition,* he has received *income* which he is required to return, even though it may still be claimed that he is

---

**1.** Taxpayer's wife is included in this civil claim because he filed a joint return for the relevant tax year.

**2.** § 1341. Computation of tax where taxpayer restores substantial amount held under claim of right

   (a) *General Rule.*—If—

   (1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item;

   (2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item; and

   (3) the amount of such deduction exceeds $3,000, then the tax imposed by this chapter for the taxable year shall be the lesser of the following:

   (4) the tax for the taxable year computed with such deduction; or

   (5) an amount equal to—

26 U.S.C. § 1341.

not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent.

*North American Oil Consolidated v. Burnet,* 286 U.S. 417, 424, 52 S.Ct. 613, 615, 76 L.Ed. 1197 (1952) (emphasis added). The statute merely allows, as an alternative to a deduction in the year of repayment, taxes for the current year to be reduced by the amount taxes were increased in the year of receipt because the funds in question were included in gross income.

The Court first applied the doctrine in the context of embezzled funds in *Commissioner of Internal Revenue v. Wilcox,* 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752 (1946). In *Wilcox* the IRS argued that embezzled funds should be treated as taxable income to the wrongdoer under § 22(a) of the Code. The Court disagreed. After noting that the essence of taxable income is "the accrual of some gain, profit or benefit to the taxpayer," *id.* at 407, 66 S.Ct. at 548, the Court held:

> For present purposes . . . it is enough to note that a taxable gain is conditioned upon (1) the presence of a claim of right to the alleged gain and (2) the absence of a definite, unconditional obligation to repay or return that which would otherwise constitute a gain. *Without some bona fide legal or equitable claim,* . . . the taxpayer cannot be said to have received any gain or profit within the reach of § 22(a).

> \* \* \* \* \* \*

> It is *obvious that the taxpayer in this instance, in embezzling the $12,748.60, received the money without any semblance of a bona fide claim of right.* And he was at all times under an unqualified duty and obligation to repay the money . . . . .

*Id.* at 408, 66 S.Ct. at 549 (emphasis added) (citation omitted). On this basis the Court concluded that embezzled money did not constitute taxable income to the embezzler.

Fifteen years later, the Court expressly overruled *Wilcox* in *James v. United States,* 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961). The Court reasoned:

A gain "constitutes taxable income when its recipient has such control over it that, as a practical matter, he derives readily realizable economic value from it," *Rutkin v. United States,* [343 U.S. 130, 137, 72 S.Ct. 571, 575, 96 L.Ed. 833]. Under these broad principles, we believe that petitioner's contention, that all unlawful gains are taxable except those resulting from embezzlement, should fail.

> When a taxpayer acquires earnings, lawfully or unlawfully, without the consensual recognition, express or implied, of an obligation to repay and without restriction as to their disposition, "he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." *North American Oil Consolidated v. Burnet,* [286 U.S. 417, 424, 52 S.Ct. 613, 615, 76 L.Ed. 1197]. *Corliss v. Bowers,* [281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916]. This standard brings wrongful appropriations within the broad sweep of "gross income" . . . . .

*Id.* at 219, 81 S.Ct. at 1055.

Because the benefit conferred by the statute depends upon whether it "appear[s] that the taxpayer had an unrestricted right to such item", it is necessary for us to determine whether in its *James* decision, the Supreme Court modified its conclusion in *Wilcox* that in embezzling funds a taxpayer "received the money without any semblance of a bona fide claim of right", 327 U.S. at 408, 66 S.Ct. at 549, or whether the Court merely said that embezzled funds are to be returned for tax purposes as part of gross income regardless of whether they were held under a "claim of right."

We agree with the reasoning of the trial court here:

> The decision . . . in *James* cannot properly be read to say that the Supreme Court concluded that embezzled funds are held under a claim of right. On the contrary, *James* does not in any way contradict or weaken the Court's statement

in *Wilcox* that embezzled funds are not held under a claim of right; it only says that this is immaterial in determining whether embezzled funds must be included in gross income.

The *James* Court merely held that the term "gross income" in the tax statute was broad enough to include money received "when its recipient has such control over it that, as a practical matter, he derives readily realizable economic value from it," 366 U.S. at 219, 81 S.Ct. at 1055, without regard to whether its recipient had a "claim of right" to the funds.

Since the language of § 1341 makes its benefits available to a taxpayer only if he "had an unrestricted right to such item", we agree with the trial court that the plain language of the statute prevents its application in favor of appellant. The language of § 1341(a)(1), *i. e.* "because it appeared that the taxpayer had an unrestricted right to such item", must necessarily mean "because it appeared [*to the taxpayer*] that [he] had an unrestricted right to such item." When the item was embezzled funds it is clear that it could not appear *to the taxpayer* that he had *any* right to the funds, much less "an unrestricted right" to them.

This contention is consistent too with the applicable regulations:

> (a) *In general.* (1) If, during the taxable year, the taxpayer is entitled . . . to a deduction of more than $3,000 because of the restoration to another of an item which was *included* in the taxpayer's gross income for a prior taxable year . . . *under a claim of right,* the tax imposed . . . shall be . . . .
>
> (2) For the purpose of this section "*income included under a claim of right*" means an item included in gross income because it *appeared* from all the facts available in the year of inclusion that the taxpayer had an unrestricted right to such item . . . . .

Treas. Reg. §§ 1.1341–1(a)(1), (2) (emphasis added).

The taxpayer contends that, notwithstanding the plain meaning of the words, the statute should be interpreted to read that whenever gains are enjoyed by a taxpayer which, under applicable laws, he is required to report as income, this requirement of itself converts such gains into income held under a "claim of right." The chronology of the two Supreme Court cases and the enactment of this statute precludes such a determination. At the time this statute was enacted, *Wilcox* was the law. Embezzled funds were not reportable as income. It could not have been the intent of Congress to give the benefits of this new relief section to holders of embezzled funds.

Our conclusion comports with the prior affirmance by us of the judgment of the district court in *Hankins v. United States,* 403 F.Supp. 257 (N.D.Miss.1975). In that case, on facts identical to those in the present case, the district court held:

> [A]s an embezzler, plaintiff never received his employer's funds under a claim of right and the benefits of Section 1341 of the Code (26 U.S.C. § 1341) are not available to him.

*Id.* at 259. Our court affirmed *Hankins* without opinion. 531 F.2d 573 (5th Cir. 1976). Since it is not clear that the trial court in *Hankins* was required to pass on the precise issue before us, we consider it appropriate to deal with the matter at greater length here.

The judgment is AFFIRMED.