Angel P. PEREZ, and Dorothy E. Perez, Plaintiffs,

v.

UNITED STATES of America, Defendants.

No. 80–1349 Civ–T–K.

United States District Court,
M.D. Florida,
Tampa Division.

Nov. 9, 1982.

Richard T. Earle, Jr., Earle & Earle, St. Petersburg, Fla., Joseph W. Jacobs, Jacobs & Jacobs, Tallahassee, Fla., for plaintiffs.

Gary J. Takacs, Asst. U.S. Atty., Tampa, Fla., George T. Rita, Dept. of Justice, Washington, D.C., for defendants.

## ORDER

KRENTZMAN, Chief Judge.

The Court has for consideration the cross-motions for summary judgment pending in this action. The motions were heard by the Court on July 7, 1982. That hearing was reported, and a transcript is available upon request and payment for same.

This is a tax refund case. The taxpayer plaintiff, Angel P. Perez,[1] was president of Florida Power Corporation from 1966 to 1973. He retired as president of the corpo-

---

1. The taxpayer's wife, Dorothy E. Perez, is a named party plaintiff because the couple filed joint returns in all relevant tax years.

ration in 1973, but remained on its Board of Directors through 1977. In 1974 and 1975, plaintiff received $193,255.32 as his share of certain commissions received by Raymond F. Granlund, a consultant to Florida Power. Perez paid income taxes on the amount received. In 1978, Perez was indicted on federal charges in what has come to be known as the Daisy Chain Conspiracy, and in 1979 he pled guilty to conspiracy to commit mail fraud. *See United States v. Ballard,* 663 F.2d 534 (5th Cir.1981) (Unit B). As a special condition of parole, Perez was required to make restitution to Florida Power, and on April 20, 1979, he paid $84,-141.11 into escrow in satisfaction of that requirement. Perez claims a loss deduction in that amount and seeks to use a statutory relief provision, 26 U.S.C. [I.R.C.] § 1341 (1976), to apply that loss deduction to his 1974–75 income. Without the benefit of section 1341, plaintiff's deduction would be taken in 1979, and would be limited to the $18,295.00 in taxes he paid in that year. With section 1341 relief, however, the deduction would be computed with reference to the taxes paid in 1974 and 1975, and would be worth $47,655.32.

Section 1341 operates to the benefit of the taxpayer if:

> (1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer *had an unrestricted right* to such item;
>
> (2) a deduction is allowable for the taxable year [i.e. the year of repayment] because it was disclosed after the close of such prior taxable year (or years) that the taxpayer *did not have an unrestricted right* to such item or to a portion of such item; and
>
> (3) the amount of such deduction exceeds $3,000 . . . .

I.R.C. § 1341(a)(1)–(a)(3) (emphasis supplied). Plaintiff contends that he paid tax on the Granlund payments in 1974 and 1975 because of the "claim of right" doctrine. He reads section 1341's "unrestricted right" language to extend the benefits of that section to all those whose previous tax payments were under the claim of right doc-

trine, but to exclude from 1341's coverage taxpayers whose previous payments were made under doctrines other than claim of right. Thus, plaintiff equates "unrestricted right" with "claim of right." Defendant heartily disagrees, arguing instead that while one convicted must pay tax on his ill-gotten gains—whether under claim of right or some other doctrine—he "never receives his ill-gotten gains under an unrestricted right." Defendant's Memorandum, May 21, 1982, at 14. Restitution of ill-gotten gains can therefore never enjoy section 1341 treatment.

The claim of right doctrine relates to the includability of particular items in gross income: "if a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income . . . , even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." *North American Oil Consolidated v. Burnet,* 286 U.S. 417, 424, 52 S.Ct. 613, 615, 76 L.Ed. 1197 (1932). The doctrine remained unquestioned for several years after *North American Oil* until the Supreme Court decided *Commissioner v. Wilcox,* 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752 (1946). *Wilcox* held that embezzled funds are not income because they are received by the embezzler "without any semblance of a bona fide claim of right." *Id.* at 408, 66 S.Ct. at 549. Thus, *Wilcox* introduced the notion that the claim of right must be bona fide, or legitimate, in order for the income to be taxable.

In *Lewis v. Commissioner,* 340 U.S. 590, 71 S.Ct. 522, 95 L.Ed. 560 (1951), the Court again considered the doctrine, but *Lewis* presented a wholly legitimate claim of right. The taxpayer had received a $22,000 bonus from his employer in 1944; he was required to repay some $11,000 in 1946 pursuant to a state court's conclusion that the bonus had been improperly calculated. The Court noted *North American Oil* in stating that the income was clearly includable in 1944: Lewis held the money in that year under a claim of right. But the court below had concluded that "the excess bonus re-

ceived 'under a mistake of fact' was not income in 1944 and [had] ordered a refund based on a recalculation of that year's tax." 340 U.S. at 591, 71 S.Ct. at 523. The Supreme Court reversed, holding instead that Lewis was entitled only to a deduction in the year of repayment. A contrary result, according to the Court, would undermine the finality of the annual tax accounting period. Id. at 592, 71 S.Ct. at 523.

Congress disagreed, and enacted section 1341 as part of the 1954 Code largely in response to Lewis. H.R.Rep. No. 1337, 83d Cong., 2d Sess., reprinted in [1954] U.S.Code Cong. & Ad.News 4017, 4436, S.Rep. No. 1622, 83d Cong., 2d Sess., reprinted in [1954] U.S.Code Cong. & Ad.News 4621, 5095. Understanding the claim of right doctrine, but with absolutely no mention of Wilcox, Congress reversed Lewis' result by allowing a taxpayer such as Lewis to take a deduction in the prior year or in the present year, whichever proved greater. Thus, section 1341 had no effect whatsoever on claim of right as a principle of includability; instead, it established rules by which the side effects of the annual accounting system could be equitably adjusted when what appeared to be income in one year had to be repaid in a later year. See United States v. Skelly Oil Co., 394 U.S. 678, 682, 89 S.Ct. 1379, 1382, 22 L.Ed.2d 642 (1969).

Finally, in James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961), the Court overruled the Wilcox exception to claim of right: "When a taxpayer acquires earnings, lawfully or unlawfully, without the consensual recognition, express or implied, of an obligation to repay and without restriction as to their disposition, 'he has received income which he is required to return ....'" 366 U.S. at 219, 81 S.Ct. at 1055 (quoting North American Oil, 286 U.S. at 424, 52 S.Ct. at 615). After James, gross income includes earnings without regard to the lawfulness of their acquisition; includability turns instead on the taxpayer's control over the funds.

Plaintiff would turn back the clock and revive the Wilcox-based distinction between embezzlers and other wrongdoers. He in-geniously but wrongly contends that embezzlement income is includable on a doctrinal basis distinct from that underlying the inclusion of other ill-gotten gains. An embezzler must pay income taxes under "the James doctrine," he contends, while extortionists, thieves, and usurpers of corporate opportunities must pay under the claim of right doctrine. Thus because section 1341's "unrestricted right" is allegedly a reworded "claim of right," all ill-gotten gains except those of an embezzler come within its deduction-shifting effect.

But ill-gotten gains are ill-gotten gains, for purposes of taxation. The result in James turned simply on the Court's conclusion that I.R.C. § 61(a), including "all income from whatever source derived," was intended to and did encompass all income from which the taxpayer "derives readily realizable economic value ...." 366 U.S. at 219, 81 S.Ct. at 1055. In Rutkin v. United States, 343 U.S. 130, 72 S.Ct. 571, 96 L.Ed. 833 (1952), the Court held that an extortionist's income was includable, relying on the breadth of language in the predecessor to section 61(a). Int.Rev.Code of 1939 § 22(a). Ill-gotten gains are included in gross income because they are within section 61(a), as construed in Rutkin and James. The Court left no room to distinguish one gain from another on the basis of the ill by which they were gotten.

■ The Court must now turn to the cases construing section 1341, notably McKinney v. United States, 574 F.2d 1240 (5th Cir.1978). The McKinney court held that the benefits of 1341 are not available when the "item" in question is embezzled funds. It stated simply and straightforwardly that 1341 could not be read to cover embezzled funds because "it could not appear to the taxpayer that he had any right to the funds, much less 'an unrestricted right' to them." Id. at 1243 (emphasis in original). Plaintiff would limit the McKinney holding to embezzlers; it cannot be so limited. The only possible argument in support of plaintiff's position relates to the legal atmosphere in which 1341 was enacted. In 1954, the Supreme Court had decid-

ed *Wilcox, Lewis,* and *Rutkin; James* was not until seven years later. Whatever line there may have been between *Wilcox* and *Rutkin* was therefore the law in 1954. The *McKinney* court was faced with a case clearly falling on the *Wilcox* side, and concluded easily that Congress could not have intended to extend 1341 to embezzlers, for their income was not even taxable in 1954. 574 F.2d at 1243. It would be difficult indeed to make the nonsensical determination whether Perez was more like a *Wilcox* embezzler or a *Rutkin* extortionist. That determination need not be made, however. The existence of the *Rutkin* case at the time Congress enacted section 1341 makes it impossible to conclude that "unrestricted right" was intended to perpetuate the *Wilcox* embezzler exception, for *Rutkin* "thoroughly devitalized" the *Wilcox* holding. *James,* 366 U.S. at 215, 81 S.Ct. at 1053. Justice Warren, in announcing the judgment of the James court, specifically recognized that *Rutkin* might well have lead Congress to believe that *Wilcox* had been completely repudiated. 366 U.S. at 220–21, 81 S.Ct. at 1056. This Court must therefore conclude that the reasoning and result in *McKinney* cannot be limited only to embezzlers; instead, the statute's "unrestricted right" language must be read to exclude from its coverage all those who receive earnings knowing themselves to have no legal right thereto.

Thus, the Court rejects the theoretical basis of plaintiff's summary judgment motion. That said, no question of fact remains to preclude summary judgment for defendant. Plaintiff suggests that trial is required on the issue of the appearance of an unrestricted right; that is, whether "it appeared from all the facts available in [1974 and 1975] that [Perez] had an unrestricted right to" the payments from Granlund. Treas.Reg. § 1.1341–1(a)(2). But Perez unquestionably took what amounted to kickback payments in clear violation of his fiduciary duty to the corporation on whose board he sat. The former Fifth Circuit's *Ballard* decision certainly cannot be read to question Perez's criminal liability. 663 F.2d at 542. Perez had no less restrict-

ed a right to the Granlund payments than McKinney had to the approximately $92,000 he embezzled from the State of Texas. There is simply no genuine dispute as to the material fact of an appearance of an unrestricted right: no such appearance can have existed.

Accordingly, the Court is of the opinion that defendant's motion for summary judgment should be, and it is hereby GRANTED. Plaintiff's motion is DENIED.