George C. and Elaine E. PARKS

v.

UNITED STATES of America.

Civil Action No. 93–1156.

United States District Court,
W.D. Pennsylvania.

Oct. 17, 1996.

Michael C. Turzai, John D. Houston, II, Houston Harbaugh, Pittsburgh, PA, for Plaintiff.

Robert L. Eberhardt, Asst. U.S. Attorney, Pittsburgh, PA, R. Scott Clarke, U.S. Department of Justice, Tax Division, Washington, DC, for Defendant.

*MEMORANDUM ORDER*

CINDRICH, District Judge.

Plaintiffs ("the Parks") bring this action seeking a federal income tax refund in the amount of $48,606. This amount was paid as tax on $175,000 that they reported as a portion of the income from the sale of a home security business in 1988, but which they repaid in 1990 in settlement of fraud-related litigation arising out of the sale. The Parks seek the refund pursuant to 26 U.S.C. § 1341. That section permits refund in a later year of taxes paid in an earlier year on income to which the taxpayer appeared to have an unrestricted right, but ultimately did not. Thus, if for some reason a taxpayer

reports as income money which he later must pay back, he may seek a refund of the taxes he paid on the returned amount. Section 1341 arose out of the Supreme Court's interpretation of the "claim of right" doctrine as found, for example, in *North American Oil Consol. v. Burnet*, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197 (1932). Briefly stated, the claim of right doctrine requires a taxpayer to report as income money as to which he has a claim of right and control of disposition, even though there are competing claims to the money and it is later restored.

The Parks have moved for summary judgment, arguing that there are no disputed facts, and that *Barrett v. Commissioner*, 96 T.C. 713, 1991 WL 80644 (1991) controls the legal determination. The United States opposes summary judgment for, among other reasons, the presence of disputes of material fact.

Summary judgment shall be granted when the pleadings on file, discovery materials, and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears this burden. *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1362 (3d Cir.1992), *cert. denied*, 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993). In considering a motion for summary judgment, we examine the facts in the light most favorable to the party opposing the motion. *Int'l Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946, 949 (3d Cir.1990). A fact is material when it might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

As noted above, the first question to be decided in considering a summary judgment motion is whether there are genuine disputes of material fact. The parties have helpfully stipulated to some background facts. The government has filed the declarations of three witnesses, however, stating that Mr. Parks personally and grossly inflated the value of his business before it was sold, essentially defrauding the buyers in the manner contended by them in the earlier civil suits. Thus, there are certainly disputes of fact; do they involve material facts?

In their brief, while they do not rebut the government's declarations, the Parks' answer is no. They rely only on the stipulated facts in support of their summary judgment motion, and argue that *Barrett* controls disposition of the legal issues. In *Barrett*, the taxpayer also allegedly received the funds through unlawful activity (insider trading) subjecting him to both civil and criminal actions, which were eventually settled. The Tax Court decided not to look behind the settlement agreement under the notion that it is important public policy to foster settlement of cases. In other words, since there was no determination that the funds were procured illegally, the court accepted the settlement agreement as establishing that the taxpayer did not have an unrestricted rights to the funds (section 1341(a)(2)). The Tax Court did not directly address, but implicitly accepted, the notion that it appeared that the taxpayer had an unrestricted right to the funds (section 1341(a)(1)).

We disagree with *Barrett*'s approach to section 1341(a)(1), which effectively reads the "appeared that the taxpayer had an unrestricted right" language out of the statute. This particular language is unusual and must be examined closely. Of course it is true, as the Tax Court observed, that the law favors settlements. Enforcement of this principle cannot be achieved at the expense of overlooking an integral element of the statute, however: the element of proof underlying the conclusion that it appeared that the taxpayer had an unrestricted right to the item at the time it was received.

█ If the taxpayer commits fraud to obtain income, this court would not accept that such conduct can create the appearance of an unrestricted right to an item of income. If one commits an intentional wrongdoing, one always does so at the risk of discovery and the potential for disgorgement, restitution, civil penalties, criminal liability, and the like. As argued elsewhere by the government in a section 1341 case, ill-gotten gains are never obtained by unrestricted right. *Perez v. United States*, 553 F.Supp. 558, 559 (M.D.Fla.1982). Under such circumstances,

we would not find that, at the time the item of income was received, it would appear that the taxpayer had an unrestricted right to the item of income. *McKinney v. United States,* 574 F.2d 1240 (5th Cir.1978), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979) (refund of taxes paid on embezzled funds not covered by section 1341); *Zadoff v. United States,* 638 F.Supp. 1240 (S.D.N.Y. 1986) (same, illegal kickbacks); *Perez* (same).

It is true that this interpretation may retard orderly settlement of claims and impose the burden on the court of conducting the very trial which was initially avoided by the settlement. But given the language of section 1341, we believe a higher purpose is being served: that the United States must never be party in any capacity to wrongdoing. By following *Barrett,* we would conclusively eliminate the government's *opportunity* to demonstrate that the income was derived from fraud, and that a corresponding refund would reward the fraud, contrary to section 1341. This is similar to the prohibition against writing off bribes as a business deduction, even though there are sometimes circumstances where such payments would otherwise have every indicia of ordinary and necessary business expenses (especially where they are less than voluntarily paid, as is the usual case).

In finding as we do, we of course accept the principle that not all events that call into question a person's right to an item of income equate with wrongdoing; not all government investigations find illicit activity, and not all civil lawsuits are justified. This appears to be the pivot for the Parks' claim, since in *McKinney, Zadoff,* and *Perez,* there were prior adjudications of liability, and there is none here. Moreover, so long as the taxpayer has a claim of right to the item, he will be required to report it as income regardless of challenges to his claim, or face the consequences from the government.

The key here, however, is that we are constrained by the language of the statute, which requires us to determine whether the taxpayer appeared to have an unrestricted right to the item of income at issue. Even when unfounded, an accusation of wrongdoing interferes with the appearance of an unrestricted right to the income (though it does not interfere with the obligation to *report* the item as income).

For our purposes, the aforementioned accusations and investigations will subject the taxpayer to trial when the taxpayer seeks a refund under section 1341. Though no small obstacle in itself, trial affords the taxpayer the chance to rebut unfounded accusations and pursue a rightful refund. It likewise permits the government to demonstrate why it should not return the proceeds of a fraud to the responsible party, as the law permits it to do.

■ In sum, we view section 1341 as encompassing situations where the appearance of an unrestricted right under section 1341(a)(1) is not created by a situation involving intentional wrongdoing: incorrect salary computations, mistaken distribution of estate proceeds, and erroneous partnership or trust distributions, for example. In cases where there are allegations of wrongdoing in the claim of unrestricted right to the income in the first instance, taxpayers may be required to undergo trial by operation of section 1341 to vindicate that right, even though they may have settled direct claims of liability for the same alleged wrongdoing.

■ Some words about the burden of proof at trial are in order. Since the taxpayers are claiming the benefit of section 1341, they will bear the initial burden of demonstrating the facts that support appearance of the unrestricted right to the refund, and the subsequent establishment that they did not have such unrestricted right. They will not be compelled to demonstrate as part of their prima facie case, however, that they did not commit fraud. Instead, the government, as a defense to the Parks' claim, will be required to prove the facts and circumstances which interfered with the appearance of the Parks' unrestricted right to the income. The United States seemingly is prepared to shoulder this burden, submitting declarations on summary judgment that emphatically recite Mr. Parks' overvaluation of assets and other acts consistent with intentional fraud.

Accordingly, plaintiffs' Motion for Summary Judgment, Doc. No. 9, is DENIED.

The court will conduct a pretrial conference on November 19, 1996 at 4:30 p.m. in Room 1011, U.S. Post Office and Courthouse, Pittsburgh, Pennsylvania.