Larry J. CULLEY Plaintiff–Appellant,

v.

UNITED STATES, Defendant–Appellee.

No. 99–5110.

United States Court of Appeals,
Federal Circuit.

Aug. 15, 2000

Kevin R. Patmore, Price & Collins, LLP, of Santa Claus, IN, argued for plaintiff-appellant. On the brief was David E. Price.

Donald B. Tobin, Attorney, Tax Division, Appellate Section, Department of Justice, of Washington, DC, argued for defendant-appellee. With him in the brief were Loretta C. Argrett, Assistant Attorney General; and Ann B. Durney, Attorney. Of counsel was Joan I. Oppenheimer, Attorney.

Before NEWMAN, Circuit Judge, SKELTON, Senior Circuit Judge, and PLAGER, Circuit Judge.

PLAGER, Circuit Judge.

Larry J. Culley filed a tax refund suit against the United States ("the Government") in the United States Court of Federal Claims. The Court of Federal Claims granted the Government's motion for summary judgment, finding that Mr. Culley failed to show that he was entitled to the favorable tax treatment provided under I.R.C. § 1341. *See Culley v. United States,* 1999 WL 314920, No. 96–576T

(Fed.Cl. Apr. 15, 1999). The Court of Federal Claims also held that Mr. Culley forfeited his claim against the Government pursuant to 28 U.S.C. § 2514. *See id.*

Because Mr. Culley does not satisfy the requirements of I.R.C. § 1341, we affirm the judgment of the Court of Federal Claims.

## BACKGROUND

Mr. Culley was the owner and sole shareholder of Thrust Industries, Inc. ("Thrust") from its incorporation in 1972 until he sold most of the assets and holdings of Thrust to Princeton Pike Park, Inc. ("Princeton") in October 1987. At the time of the sale, Mr. Culley agreed to continue to direct the day to day business affairs of Thrust, which he did through 1989. Thrust's principal business activity was the die-cutting of membrane spacers and faceplates for telephone sets.

From 1983 until Mr. Culley's 1989 departure from Thrust, Thrust produced membrane spacers and faceplates for AT & T, Thrust's largest customer. The record establishes that, sometime in 1983, Mr. Culley entered into a bribery and kickback scheme with Andrew Lloyd, a senior buyer at AT & T's Shreveport, Louisiana operations site. Under the scheme, Mr. Culley paid Mr. Lloyd money in return for Mr. Lloyd's influence in directing AT & T business to Thrust. Mr. Culley inflated the prices charged to AT & T in order to finance the kickback payments to Mr. Lloyd.

In 1987, when he was negotiating with Princeton for the sale of Thrust, Mr. Culley made several material false statements and omissions regarding the past business practices and financial affairs of Thrust. Specifically, he failed to disclose the illegal bribery and kickback schemes with AT & T and another large customer. He also represented to Princeton that Thrust's books and records had been properly maintained in accordance with legal requirements although he knew that for several years he had made false entries to conceal the use of corporate funds for personal expenditures. Furthermore, Mr. Culley was aware that he had filed false corporate tax returns. In addition, Mr. Culley failed to disclose to Princeton that his former long-term plant manager and former sales manager were in business together in direct competition with Thrust.

In September 1988, as part of an investigation by the Internal Revenue Service ("IRS"), Mr. Culley was served with a federal grand jury subpoena. In October 1989, Princeton filed a civil action against Mr. Culley and High–Tech, Inc. (formerly Thrust) demanding rescission of the sale of Thrust's assets, plus damages. In September 1990, the federal grand jury issued a 31–count indictment charging Mr. Culley with fraud, commercial bribery, racketeering, and tax evasion. In June 1991, AT & T filed a civil action against Mr. Culley demanding damages for fraud.

In July 1991, the criminal and civil cases against Mr. Culley were resolved in a combined settlement agreement. He pleaded guilty to several counts of the indictment, including two counts of mail fraud for his scheme to defraud AT & T through a bribery and kickback arrangement and for his scheme to defraud Princeton through the fraudulent sale of Thrust. He also agreed to liquidate his assets, to pay $1.2 million in restitution to AT & T and $1.8 million in restitution to Princeton in settlement of the civil suits against him, and to pay the IRS and the United States an amount to be determined in satisfaction of criminal tax and forfeiture claims. In November 1991, a federal judge sentenced Mr. Culley to seven years imprisonment and three years probation.

When he filed his tax return for the year 1991, Mr. Culley computed his tax liability using I.R.C. § 1341, which provides a special rule favorable to the taxpayer. The rule applies when a taxpayer repays money in a current year that belongs to someone else, but was money that he received and included in gross income in a prior year. Mr. Culley claimed that the $3 million paid to AT & T and Princeton in 1991

was a restoration of amounts that had been included in his gross income in 1988, and on which he had paid tax. Thus, according to Mr. Culley, § 1341 permitted him to reduce the tax he owed in 1991 by the decrease in tax for 1988 which would have resulted if the $3 million had been excluded from income in 1988. Accordingly, Mr. Culley computed a reduction in tax for 1991 of $860,235, which created a net credit of $712,929 for 1991. After adjusting for estimated tax payments, Mr. Culley demanded a refund of $652,424.

The IRS audited Mr. Culley's 1991 return and disallowed the $860,235 credit he had claimed under I.R.C. § 1341. Instead, the IRS permitted Mr. Culley to deduct the restitution payments as a capital loss in 1991 to the extent allowable—$219,796 to eliminate reported capital gains, plus $1,500, as permitted by I.R.C. § 1211— and to carry forward further losses to the extent the Code permitted. After paying the amount the IRS assessed for the 1991 tax year, Mr. Culley in 1995 filed a refund claim in which he claimed the benefit of I.R.C. § 1341. The IRS denied Mr. Culley's refund claim, and Mr. Culley filed a refund suit in the Court of Federal Claims.

In its motion for summary judgment, the Government argued that Mr. Culley was not entitled to § 1341 treatment for the payment made to AT & T because payments made by AT & T entered Thrust's gross income, not Mr. Culley's. The Government also argued that Mr. Culley was not entitled to § 1341 treatment for the payment made to Princeton because he did not have an "unrestricted right"—as required by § 1341—to the proceeds of the transaction. In his own motion for summary judgment, Mr. Culley claimed he was entitled to § 1341 treatment because he had the ability to dispose of the money at issue when it was received. He also claimed that payments from AT & T entered his income because Thrust was a subchapter S corporation, *see* I.R.C. § 1361, and he was the sole shareholder. Upon discovering that Thrust was actually a subchapter C corporation, the Government moved to amend its answer to include a defense under 28 U.S.C. § 2514 that Mr. Culley's claim should be forfeited because he intentionally made a false statement to the court.

The Court of Federal Claims granted the Government's motion for summary judgment, finding that Mr. Culley was not entitled to § 1341 treatment with respect to the restitution payments to AT & T and Princeton because neither the payments received from AT & T nor the proceeds of the sale of Thrust to Princeton entered Mr. Culley's gross income. The Court of Federal Claims also determined that Mr. Culley had forfeited his claim against the Government because he knowingly misrepresented Thrust's corporate status with the intent to deceive the Government. Mr. Culley appeals the judgment of the Court of Federal Claims to this Court.

## DISCUSSION

■ In reviewing a trial court's grant of summary judgment, we must make an independent determination as to whether the standards for summary judgment have been met. *See McKay v. United States,* 199 F.3d 1376, 1380 (Fed.Cir.1999). We view the evidence in a light most favorable to the non-movant, and draw all reasonable inferences in its favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A motion for summary judgment is properly granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c).

### 1.

■ Mr. Culley claims the benefit of I.R.C. § 1341, which Congress enacted to address a particular situation arising under the "claim of right" doctrine. Under that doctrine, a taxpayer who receives income "under a claim of right and without restriction as to its disposition" must include the amount in his gross income for the year in which it was received, even

though it is later determined that the taxpayer must repay the amount. *United States v. Skelly Oil,* 394 U.S. 678, 680, 89 S.Ct. 1379, 22 L.Ed.2d 642 (1969) (citing *North Am. Oil Consol. v. Burnet,* 286 U.S. 417, 424, 52 S.Ct. 613, 76 L.Ed. 1197 (1932)). Before the enactment of I.R.C. § 1341, a taxpayer who included an item in gross income in one year, and who repaid the item in a later year, was entitled to a deduction for the repayment only in the year of repayment. *See United States v. Lewis,* 340 U.S. 590, 591–92, 71 S.Ct. 522, 95 L.Ed. 560 (1951). The tax benefit from such a deduction might be less than the tax paid on the amount in the year of receipt if, for example, tax rates have changed or the taxpayer is in a lower tax bracket. *See Skelly Oil,* 394 U.S. at 681, 89 S.Ct. 1379.

Congress enacted I.R.C. § 1341 to alleviate the possible inequities when a taxpayer reports income in the year he receives money, but incurs a loss in a later year when he is adjudged liable to repay that money to another. *See id.* at 681–82, 89 S.Ct. 1379 (citing H.R.Rep. No. 83–1337, at 86–87 (1954), *reprinted in* 1954 U.S.C.C.A.N. 4017, 4436; S.Rep. No. 83–1622, at 118–19 (1954), *reprinted in* 1954 U.S.C.C.A.N. 4621, 5095). As an alternative to a deduction (e.g., as a capital loss) in the year of repayment, § 1341 permits certain taxpayers to reduce their taxes in the year of repayment by the amount of additional tax paid in the year of receipt due to the amount in question; i.e., § 1341 essentially allows a taxpayer to recompute taxes for the year in which the taxpayer originally received the money, excluding from income the money that has been later repaid to another. *See id.* at 682, 89 S.Ct. 1379.

The relevant portion of § 1341 reads:

§ 1341. Computation of tax where taxpayer restores substantial amount held under claim of right

(a) General rule.—If—

(1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item;

(2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item; and

(3) the amount of such deduction exceeds $3,000,

then the tax imposed by this chapter for the taxable year shall be the lesser of the following:

(4) the tax for the taxable year computed with such deduction; or

(5) an amount equal to—

(A) the tax for the taxable year computed without such deduction, minus

(B) the decrease in tax under this chapter (or the corresponding provision of prior revenue laws) for the prior taxable year (or years) which would result solely from the exclusion of such item (or portion thereof) from gross income for such prior taxable year (or years).

Thus, a qualified taxpayer has the choice of taking the deduction otherwise allowed for the repayment, *see* § 1341(a)(4), or reducing his taxes by an amount equal to the income tax already paid in the prior year on the amount in question, *see* § 1341(a)(5). Mr. Culley seeks the benefit of the latter, which, he alleges, reduces his 1991 tax by $860,235, the reduction in his 1988 tax liability had the $3 million been excluded from his 1988 gross income.

2.

▆ It is basic tax law that deductions from taxable income, for purposes of computing tax due the United States, are matters of statutory grant; a claim for a deduction must meet the terms Congress established for the grant. A taxpayer qualifies for favorable treatment under § 1341 if (1) an item was included in the

taxpayer's gross income in a prior year, *see* § 1341(a)(1); (2) it appeared that the taxpayer had an unrestricted right to the item in the prior year, *see* § 1341(a)(1); and (3) the taxpayer is entitled to a deduction (in excess of $3,000) under another section of the Internal Revenue Code for the loss resulting from the payment of the item to another in the current tax year, *see* § 1341(a)(2); *see also* Treas. Reg. § 1341–1(a)(1); *Skelly Oil*, 394 U.S. at 683, 89 S.Ct. 1379; *Kraft v. United States*, 991 F.2d 292, 298 (6th Cir.1993); *Bailey v. Commissioner*, 756 F.2d 44, 47 (6th Cir. 1985). The IRS permitted Mr. Culley to deduct the restitution payments to AT & T and Princeton as a capital loss; he therefore satisfies the third requirement. For Mr. Culley to receive the benefit of § 1341, however, he must also show that the $3 million he restored to AT & T and Princeton related to items included in his gross income in 1988 and that it appeared he had an unrestricted right to those items in 1988. Though the parties disputed in the trial court the question of whether the money was Mr. Culley's or the corporation's, we address only the "unrestricted right" requirement because we find it to be dispositive.

■ Mr. Culley argues that it appeared he had an unrestricted right to the funds at issue because there were no restrictions on his disposition of the money. AT & T paid money to Thrust for products purchased under contract, and some of that money went to Mr. Culley in the form of salary, dividends, and other emoluments from Thrust. Likewise, Thrust received money from Princeton for the sale of Thrust's assets, and that money ultimately entered Mr. Culley's income through dissolution of the corporation. Neither AT & T nor Princeton placed any restrictions on the money paid to Thrust or Mr. Culley.

The Government contends that it could not have appeared to Mr. Culley that he had an unrestricted right to the funds received because they were obtained as a result of Mr. Culley's fraudulent and unlawful conduct. In support of its posi-

tion, the Government cites the opinions of several courts denying § 1341 treatment to taxpayers who have engaged in fraudulent conduct, embezzled funds, or otherwise knowingly misappropriated funds. *See Kraft*, 991 F.2d at 299 (no unrestricted right to money received as a result of fraudulent insurance claims); *McKinney v. United States*, 574 F.2d 1240, 1243 (5th Cir.1978) (no unrestricted right to embezzled funds); *Parks v. United States*, 945 F.Supp. 865, 866–67 (W.D.Pa. 1996) (denying taxpayers' motion for summary judgment because there would be no unrestricted right to proceeds of sale of business if allegations of fraud were proven at trial); *Zadoff v. United States*, 638 F.Supp. 1240, 1243 (S.D.N.Y. 1986) (no unrestricted right to illegal kickbacks and salary received while acting in a manner disloyal to employer); *Perez v. United States*, 553 F.Supp. 558, 561 (M.D.Fla.1982) (no unrestricted right to illegal kickback payments); *Wang v. Commissioner*, 76 T.C.M. (CCH) 753, 759 (1998) (no unrestricted right to profits from sale of insider information in violation of securities laws); *Yerkie v. Commissioner*, 67 T.C. 388, 392, 1976 WL 3745 (1976) (no unrestricted right to embezzled funds).

We find the reasoning of these cases persuasive. The Fifth Circuit has interpreted the "appearance of an unrestricted right" to mean the appearance to the taxpayer of an unrestricted right. *See McKinney*, 574 F.2d at 1243. The Treasury regulation interpreting § 1341 further states that the appearance of an unrestricted right must be based on "all the facts available in the year" that the taxpayer included the amount in question in his gross income. Treas. Reg. § 1.1341–1(a)(2).

When a taxpayer knowingly obtains funds as the result of fraudulent action, it simply cannot appear from the facts known to him at the time that he has a legitimate, unrestricted claim to the money. *See, e.g., Perez*, 553 F.Supp. at 561 ("[T]he statute's 'unrestricted right' language must be read to exclude from its coverage all those who

receive earnings knowing themselves to have no legal right thereto."). When committing an intentional wrong, a taxpayer must be prepared for the eventuality of being discovered and being held liable for repayment in the form of restitution, disgorgement, civil or criminal penalties, or the like. *See Parks,* 945 F.Supp. at 866. A taxpayer's illicit hope that his intentional wrongdoing will go undetected cannot create the appearance of an unrestricted right.

Mr. Culley urges that there should be no per se rule that taxpayers with illegal income cannot obtain the benefits of § 1341, and that we should decide whether his particular circumstances meet the requirements of § 1341. *See Wang,* 76 T.C.M. (CCH) at 759. We agree that the issue presented by § 1341 is not simply whether Mr. Culley obtained funds unlawfully, but whether it appeared to him that he had an unrestricted right to those funds.

This is not a situation in which an act not involving intentional wrongdoing—incorrect salary or bonus computation, mistaken distribution of estate proceeds, or erroneous partnership or trust distributions, for example—gives rise to the appearance of an unrestricted right. *See Parks,* 945 F.Supp. at 867. As Mr. Culley admitted in his guilty plea agreement, he knowingly orchestrated and participated in schemes to defraud AT & T, through a bribery and kickback arrangement, and Princeton, through the fraudulent sale of Thrust. Under these circumstances, in which Mr. Culley intentionally engaged in fraudulent activities, it could not have appeared to him in 1988 that he had an unrestricted right to funds received as a result of those activities.

We reject Mr. Culley's contention that he is entitled to § 1341 treatment merely because he received money from AT & T and Princeton without formal restriction as to its disposition. The lack of restriction as to its disposition required Mr. Culley to report the money received as part of his gross income in 1988, regardless of whether the income was lawfully obtained, because it falls within the definition of "gross income" provided by I.R.C. § 61(a). *See James v. United States,* 366 U.S. 213, 219–20, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961); *see also McKinney,* 574 F.2d at 1243 (explaining the holding of *James* ); *Perez,* 553 F.Supp. at 560 (same). But § 1341 does not apply to all items included in gross income; it applies only to items to which it appeared the taxpayer had an unrestricted right.

Nor does the judicial "claim of right" doctrine help Mr. Culley. As discussed above, that doctrine requires a taxpayer who receives income under a claim of right and without restriction as to its disposition to include the amount in his gross income for the year in which it was received. If it is later determined that the taxpayer must repay the amount, the taxpayer may be entitled to a deduction in the year of repayment, if a statute so provides. The doctrine, however, does not serve to convert moneys, so received and reported, into income to which it appears the taxpayer has an unrestricted right. *See Yerkie,* 67 T.C. at 392 ("The inclusion of embezzled funds as gross income and the concomitant right to a deduction upon repayment neither categorizes embezzled proceeds as income rightfully received nor bestows upon these funds the characteristics of income received under a claim of right."). Thus, although Mr. Culley is entitled to the deduction provided by statute against capital gains in 1991, the year in which he paid restitution to AT & T and Princeton, he is not entitled to the favorable treatment accorded under § 1341 because it could not appear to him that he had an unrestricted right to the money received in 1988.

Because Mr. Culley fails to satisfy the "unrestricted right" requirement of § 1341, we need not consider whether Mr. Culley satisfies the other remaining requirement, i.e., whether the restitution payments relate directly to items included in Mr. Culley's gross income in 1988.[1]

---

1. The Government has conceded that pro-

ceeds from the sale of Thrust to Princeton in

Furthermore, because we affirm the decision of the Court of Federal Claims granting the Government's motion for summary judgment on the grounds that Mr. Culley does not satisfy the requirements of § 1341, we need not consider whether Mr. Culley forfeited his claim against the Government as the Government alleges.

## CONCLUSION

The judgment of the Court of Federal Claims is

*AFFIRMED.*

## COSTS

Each party shall bear its own costs.

1988 entered Mr. Culley's income because tax law treats the liquidation distributions received by Mr. Culley as if the distributions were received directly from Princeton. *See, e.g.,* Rev. Rul. 78–25, 1978–1 C.B. 270. We express no opinion as to whether the proceeds from the sale of goods to AT & T are considered for tax purposes to have entered Mr. Culley's income.