PROST, Circuit Judge,
concurring-in-part.
I join the majority opinion with respect to part II, and therefore concur in the result. I believe the inventory exception applies to exclude from 26 U.S.C. § 1341(a) the transactions in this case, as clearly explained by the majority opinion. I would, however, reverse solely on that ground because I have some doubts about the government’s position with respect to the initial applicability of § 1341 in this case.
As an initial matter, I believe that the “item” included in gross income refers here to Quaker’s “gross income derived from business,” as set forth in 26 U.S.C. § 61. Just as the cost of goods sold (“COGS”) is a component in the calculation of income, not a separate deduction, the “item” at issue in this case refers to Pennzoil-Quaker State Company’s (“Quaker’s”) business income as a whole; COGS comprises one component of that income. When the settlement payment resulted from underpayment of COGS—a transaction affecting the item included in income—the requirements of § 1341(a) were met.
The government argues for, and the majority adopts, a requirement that the item included in income, to which § 1341 applies, must itself qualify for a deduction. But any requirement for such a close rela *1375 tionship between the item included in income and the later deduction finds little support in the statute or case law. The statute simply requires a deduction allowable “because ... the taxpayer did not have an unrestricted right to such item.” 26 U.S.C. § 1341(a). I read no requirement that the item itself qualify for a deduction, but rather understand the statute to require only that the deduction be a result of a change in the taxpayer’s right to the item. Indeed, in many circumstances, the “item” included would result from receipts that increased the taxpayer’s taxable income in a prior year; such receipts would never constitute the basis for a deduction.
Case law addressing the relationship between the item included in income and the later deduction offers little guidance. Reliance on MidAmerican Energy Co. v. Comm’r, 271 F.3d 740 (8th Cir.2001), seems misplaced where that decision merely characterized a prior decision from the Seventh Circuit, Wicor, Inc. v. United States, 263 F.3d 659 (7th Cir.2001). In Wicor, the court was discussing whether anything in the case qualified as a deduction, not whether the item included in income could qualify for a deduction. Id. at 662. I have no doubt that COGS is merely one component in the computation of income from business. But the unavailability of a deduction for COGS does not mean that § 1341 cannot apply to transactions involving COGS. In short, neither the statute nor the case law requires the type of relationship argued by the government.
Here, Quaker took an ordinary business expense deduction as a result of settling a lawsuit that challenged the price Quaker paid for raw goods. Quaker made the settlement payment because it owed more money than it paid for those goods; as a result, it did not have an unrestricted right to the full income it had stated in earlier years. As I read the statute, this course of events satisfies § 1341(a).
Finally, I see no requirement for a “restoration” in the statute such that the taxpayer claiming treatment under § 1341 must return money to a party that had previously given the taxpayer money. Unlike the majority, I do not read Culley v. United States to establish any restoration requirement. 222 F.3d 1331 (Fed.Cir.2000). Rather, the taxpayer in that case undoubtedly made a restoration—by returning money to the parties that had paid the taxpayer initially. Id. at 1335. The only two issues, therefore, were whether the restoration related to the items included in gross income, and whether it appeared that the taxpayer had an unrestricted right to the item in the prior year. Id. The court explicitly limited its analysis to the latter question of the appearance of an “unrestricted right.” Id. Thus, I do not read this case as establishing a restoration requirement under § 1341. Nothing in the statute limits its applicability to repayment of prior receipts.
Having rejected the grounds upon which the government relies for its position in this case, I would hold that Quaker can invoke § 1341 for its settlement payments. As the majority explains, however, the inventory exception of § 1341(b) precludes favorable tax treatment for Quaker in this instance. Therefore, I join the majority in reversing.