PENNZOIL–QUAKER STATE COMPANY AND SUBSIDIARIES, Successor to Quaker State Corporation and Subsidiaries, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 02–279 T.

United States Court of Federal Claims.

Oct. 28, 2004.

Peter Andrew Lowy, Houston, TX, counsel of record for plaintiff.

Jennifer Dover Spriggs, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, DC, counsel of record for defendant, with whom were Eileen J. O'Connor, Assistant Attorney General, Mildred L. Seidman, Chief of the Court of Federal Claims Section, and David Gustafson, Assistant Chief.

## OPINION

DAMICH, Chief Judge.

### I. *Introduction*

Before the Court are Plaintiff's Motion for Partial Summary Judgment and the Cross–Motion of the United States for Summary Judgment (hereinafter "Def.'s X–Mot."). In this action, Pennzoil–Quaker State Company and Subsidiaries (hereinafter "Plaintiff") seeks a refund of $426,784 for the tax years 1994–97, due to taxes it paid to the United States Government (hereinafter "Defendant") on income earned in the taxable years 1981–1995. Plaintiff asserts that it is entitled to relief under the Claim of Right Doctrine, which is set forth in 26 U.S.C. § 1341 (§ 1341 of the Internal Revenue Code (hereinafter "I.R.C.")). Section 1341 provides tax relief in certain circumstances to a taxpayer who includes an item in gross income in one tax year, paying tax on that item, but is compelled to return the item in a subsequent year. The statute, "in effect, permits the taxpayer to take the deduction at the same tax rate at which the income was taxed." Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment (hereinafter "Pl.'s Mot.") at 4–5.

For the reasons set forth herein, Plaintiff's Motion for Partial Summary Judgment is GRANTED, and Defendant's Cross–Motion for Summary Judgment is GRANTED in part and DENIED in part.

### II. *Background*

The outcome of this case turns on a legal principle known as the claim of right doctrine. This doctrine was enunciated in 1932, when the Supreme Court stated:

1. *See* Note, *Taxing Unsettled Income: The "Claim of Right" Test,* 58 Yale L.J. 955, 956–57 (1949): Restitution may take place either in a year of lower tax rates or in a year when the taxpayer's decreased income places him in a lower tax bracket, so that even a full deduction would not compensate for the original tax. And where a taxpayer's net income is negligible, the right to deduct repayment as a loss is even colder comfort.

2. In pertinent part, § 1341 states that a taxpayer may effectively take his deduction at the same tax rate at which his income was taxed if:

If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent.

*N. Am. Oil Consol. v. Burnet,* 286 U.S. 417, 424, 52 S.Ct. 613, 76 L.Ed. 1197 (1932). This doctrine required a taxpayer who received disputed income to include that income in the year it was received, even though he might later be required to return the income. *Id.* The doctrine evolved further when the Supreme Court decided *United States v. Lewis,* 340 U.S. 590, 71 S.Ct. 522, 95 L.Ed. 560 (1951). In *Lewis,* a taxpayer sought to have his tax recomputed after he was required to return a portion of an improperly calculated employee bonus that he received in a prior year. *Id.* at 590–91, 71 S.Ct. 522. The Supreme Court found that the tax in the prior year could not be recomputed, but that the taxpayer could take a deduction in the year in which he was required to return the income. *Id.* at 592, 71 S.Ct. 522. Application of the *Lewis* rule, however, meant that the benefit a taxpayer derived from returning the claim of right income might be less than the detriment he incurred when he had paid taxes on that income.[1] Congress reacted to the *Lewis* case by stating that: "In many instances of this nature, the deduction allowable in the later year d[id] not compensate the taxpayer adequately for the tax paid in the earlier year." S.Rep. No. 83–1622, at 118 (1954). As a result, § 1341[2] was enacted in 1954 to allow a taxpayer to enjoy his deduction at the same tax rate that applied when the item was taken into income. *See* S.Rep.

(a)(1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item;

(2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item; and

(3) the amount of such deduction exceeds $3,000.

No. 83–1622, at 118; H.R.Rep. No. 83–1337, at 86 (1954).

In its Complaint, Plaintiff claims that it is entitled to § 1341 tax relief to compensate it for monies expended on two occasions: (1) when payments were made directly to coal miners to compensate them for contracting black lung disease (hereinafter the "Black Lung" claim); and (2) when payments were made to a group of oil companies, including the Lazy Oil Company, to settle antitrust claims relating to price-fixing (hereinafter the "Lazy Oil" claim).

## A. The Black Lung Claim

For a period of time ending in June 1993, Quaker State Corporation and Subsidiaries (hereinafter "Quaker State" or "Quaker"), to which Plaintiff is the successor, engaged in coal mining operations. Compl. ¶ 4, at 2; Answer ¶ 4, at 2; Def.'s X–Mot. at 7. As such, it was subject to the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. § 921, and the Black Lung Benefits Reform Act of 1977, 30 U.S.C. § 934, which required Quaker State to provide benefits to coal miners who were disabled by black lung disease. Quaker State made many of these payments to its employees. See Def.'s X–Mot. at 8–9. For tax purposes, Plaintiff allocated these payments to the tax years 1979–88. Def.'s X–Mot. at 8.

## B. The Lazy Oil Claim

Quaker State bought Pennsylvania Grade Crude oil from certain independent oil producers in Pennsylvania from 1981 through 1995. Defendant's Response to Plaintiff's Proposed Findings of Uncontroverted Fact (hereinafter "Def.'s Resp. to PPFUF") ¶ 1, at 2. Quaker State used this oil to produce motor oil and other products, which it sold to consumers, after which the company reported the gross income on its federal income tax returns for the relevant years. Id. ¶ 2, at 3, ¶ 3, at 4.

In 1994, many of Quaker State's independent suppliers, including a company known as Lazy Oil, brought suit against Quaker State and other large oil purchasers, claiming price-fixing, which allegedly reduced the price at which the independent producers could sell their oil. Plaintiff's Response to Defendant's Proposed Findings of Uncontroverted Fact (hereinafter "Pl's Resp. to DPFUF") ¶¶ 39–40, at 13–14. The actions brought by the "Lazy Oil plaintiffs" were consolidated into a class action. Id. ¶ 39, at 13. Quaker State settled this lawsuit for $4.4 million, with half being paid on the day of the settlement (in 1995) and half being paid upon final approval by the court (in 1996). Id. ¶ 41–42, at 14–15, ¶ 45, at 16. The money went into a fund that was dispersed by parties other than Quaker State. Id. ¶¶ 42–43, at 15. Quaker State did not admit liability in the settlement. Def.'s Resp. to PPFUF ¶ 9, at 10. However, one of Plaintiff's employees said in a deposition that "plaintiff would not have paid 4.4 million if there wasn't liability." Def.'s X–Mot. at B.242; Deposition of Ruth E. Salek (hereinafter "Salek Dep.") at 40. For tax purposes, Plaintiff allocated the $4.4 million to the years that it bought oil from the Lazy Oil plaintiffs, based on a ratio of barrels of oil bought in a given year to total barrels bought over the 1981–95 period. Pl.'s Resp. to DPFUF ¶ 46, at 16.

The parties agree that Quaker State filed its income tax returns for the 1994–97 taxable years in a timely fashion and that Plaintiff paid its federal income tax liabilities for those tax years. Compl. ¶ 5.1,[3] at 2; Answer ¶ 5.1, at 2; Pl.'s Resp. to DPFUF ¶ 9, at 3. In December 1998 or January 1999, Plaintiff filed amended returns for 1994–97, claiming the right to use § 1341. Compl. ¶ 5.2, at 2; Answer ¶ 5.2, at 3. Plaintiff claimed refunds of $50,420 for 1994; $151,882 for 1995; $210,610 for 1996; and $13,872 for 1997. Compl. ¶ 5.2, at 2; Answer ¶ 5.2, at 3. Both the Lazy Oil and the Black Lung claims were disallowed by the IRS. Compl. ¶ 5.2, at 2; Answer ¶ 5.2, at 3. Plaintiff then filed this suit in April 2002, claiming that it is entitled to recover the full amount of the allegedly overpaid taxes, along with interest thereon. Compl. ¶ 7, at 3.

3. The paragraphs of the Complaint and Answer are numbered 1–7; however the number "5" is used twice in each one. Therefore, the Court will be referring to the paragraph that appears first as "5.1" and the one appearing second as "5.2."

## III. *Analysis*

Although Plaintiff originally made two claims against the government, only the Lazy Oil claim needs to be discussed at length in this opinion, because Plaintiff no longer contests Defendant's position regarding the Black Lung claim.[4] Accordingly, with no factual basis for its claim, Plaintiff's Black lung claim is legally insufficient. Therefore, it is appropriate to grant Defendant's motion for summary judgment regarding the Black Lung claim. As a result, the only remaining issue in this case is whether Plaintiff is entitled to receive § 1341 tax relief for monies expended on the antitrust settlement payments. The Court finds that Plaintiff is entitled to such relief.

### A. Summary Judgment Standard

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is considered material if it is one that might affect the outcome of the suit. *Id.* at 248, 106 S.Ct. 2505. An issue of material fact is genuine if the evidence is such that a reasonable jury or trier of fact could return a verdict in favor of the non-moving party. *Id.* Furthermore, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [its] favor."[5] *Id.* at 255, 106 S.Ct. 2505. Initially, the moving party bears the burden of demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party can meet its burden by demonstrating the absence of issues of material fact or by showing the absence of evidence to support the non-moving party's case. *Id.* If the moving party makes such a showing, the burden shifts to the non-moving party to present

contrary evidence. *Id.* at 324, 106 S.Ct. 2548.

### B. Burden of Proof

Ultimately, Plaintiff has the burden of proving that the Commissioner's determination was invalid. As the Supreme Court said in *Lewis v. Reynolds:* "The action to recover on a claim for refund is in the nature of an action for money had and received and it is incumbent upon the claimant to show that the United States has money which belongs to him." 284 U.S. 281, 283, 52 S.Ct. 145, 76 L.Ed. 293 (1932) (quoting *Lewis v. Reynolds,* 48 F.2d 515, 516 (10th Cir.1931), *aff'd* 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293 (1932) (citation omitted)); *see also Helvering v. Taylor,* 293 U.S. 507, 515, 55 S.Ct. 287, 79 L.Ed. 623 (1935).

### C. The Requirements of § 1341(a)

The language of § 1341 requires Plaintiff to prove that five factors have been met: (1) an *"item"* must have been *"included in gross income* for a *prior* taxable year (or years),"* (2) "because it *appeared* that the taxpayer had an unrestricted right to such item"; (3) a *"deduction"* must be "allowable for the taxable year," (4) "because *it was established* after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item"; and (5) "the amount of such deduction" must exceed $3,000." (emphasis added). As the parties do not dispute that the fifth requirement has been met, Def.'s Resp. to PPFUF ¶ 11, at 12, the Court only needs to examine requirements 1–4.

#### 1. Item

The Court must first address whether Plaintiff possessed an "item ... included in gross income." I.R.C. § 1341. Plaintiff argues that it had an item of gross income, basing its assertion on an I.R.C. provision

---

4. Plaintiff "concede[d] the Black Lung fact pattern" in its Reply to Brief for the United States in Support of its Cross–Motion for Summary Judgment (hereinafter "Pl.'s Reply"). Pl.'s Reply at 1. Furthermore, in Plaintiff's Response to Defendant's Proposed Findings of Fact, Plaintiff states: "Plaintiff has conceded the Black Lung issue, and therefore the facts related thereto are no

longer relevant." Pl.'s Resp. to DPFUF ¶ 16, at 5.

5. In this case, the facts are virtually undisputed. *See* Def.'s Resp. to PPFUF; Pl.'s Resp. to DPFUF.

and a Treasury Regulation. Pl.'s Mot. at 10–11. First, I.R.C. § 61 states:

> Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following *items:*
>
> \* \* \* \* \* \*
>
> (2) Gross income derived from business

§ 61(a) (emphasis added). Second, "gross income derived from business," has been defined as, "[i]n a manufacturing, merchandising, or mining business, ... the total sales, *less the cost of goods sold.*" Treas. Reg. § 1.61–3(a) (emphasis added). As a result, Plaintiff reasons, one "item ... included in gross income" is the unit of gross receipts less cost of goods sold (hereinafter "COGS"). Pl.'s Mot. at 10–11; *see also In re Grace Lilly,* 76 F.3d 568, 572 (4th Cir.1996) (overstatement of COGS found to be a subtraction from an item of gross income).[6]

Plaintiff argues the virtue of using two canons of statutory interpretation to discern the meaning of "item ... included in gross income" in § 1341: (1) since § 1341 is a remedial statute, it should be interpreted broadly to effectuate congressional goals; and (2) any doubts regarding the plain meaning of the statute must be resolved against the government and in favor of the taxpayer. Pl.'s Reply at 1 (citing *Xerox Corp. v. United States,* 41 F.3d 647, 658 (Fed.Cir.1994); *Federal National Mortgage Ass'n v. United States,* 56 Fed.Cl. 228, 238 (2003)). Although Plaintiff is correct that the above statements are canons of construction, this Court is not required to consider them when deciding the appropriate definition of "item" because that definition is apparent from the Code and the Treasury Regulations themselves. *See N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 655, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) ("[W]e begin as we do in any exercise of statutory construction with the text of the provision in question, and move on, *as need be,* to the structure and purpose of the Act in which it occurs.") (emphasis added); *see also Duncan v. Walker,* 533 U.S. 167, 172, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) ("We begin, as always, with the language of the statute."). For instance, regarding the first canon, the Federal Circuit, in *Smith v. Brown,* said:

> It is ... true that courts are to construe remedial statutes liberally to effectuate their purposes. But a canon of broad construction comes into play *only* if the meaning of the text is doubtful. Otherwise, there is no room for such construction, and the court must give effect to the clearly expressed intent of the legislative authority.

35 F.3d 1516, 1525 (Fed.Cir.1994) (emphasis added) (internal citations omitted). Regarding the second canon, the Supreme Court has stated:

> In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. *In case of doubt* they are construed most strongly against the government, and in favor of the citizen.

*Gould v. Gould,* 245 U.S. 151, 153, 38 S.Ct. 53, 62 L.Ed. 211 (1917) (emphasis added).

Defendant also stresses the importance of using sources other than the statute and regulations to interpret gross income. Def.'s X–Mot. at 5. Defendant relies on *Don E. Williams Co. v. Comm'r,* 429 U.S. 569, 580–82, 97 S.Ct. 850, 51 L.Ed.2d 48 (1977) and *Conforte v. Comm'r,* 692 F.2d 587, 591 (9th Cir.1982) for the proposition that statutory terms should be interpreted consistently with the purpose of the statute in which they are used. Def.'s X–Mot. at 15. In both *Williams* and *Conforte,* the meaning of a

---

6. Although Defendant disputes Plaintiff's contention, counsel at oral argument did admit that COGS is taken into account when assessing gross income:

> THE COURT: [T]he cost of goods sold certainly is required. You have to go through that exercise in order to get gross income for pur-

poses of then deducting and then getting taxable income.

> [DEFENSE COUNSEL]: Yes, it is deducted. It is an adjustment, but it is not in and of itself an item of gross income.

May 7, 2004 Oral Argument Transcript (hereinafter "Tr.") at 43.

term or phrase in a section of the Internal Revenue Code was at issue, although neither case dealt with § 1341. *See Williams,* 429 U.S. at 569, 97 S.Ct. 850 (interpreting two terms in § 404(a) of the 1954 Code); *Conforte,* 692 F.2d at 591 (interpreting a phrase in § 6211(a)(1)(A) of the Code). Defendant applies this proposition to argue that, "To apply Section 1341 to additional expenses paid in a later year, rather than to an item that was included in gross income in a prior year, is contrary to the terms both of the statute and the regulations." Def.'s X–Mot. at 5. Although the Court agrees with the general proposition that the purpose of the statute is important when interpreting the meaning of individual words or phrases in that statute, the Court does not need to consider sources other than the statutes and regulations when interpreting "item ... included in gross income" because the Code and Treasury Regulations are clear on their face. *See Blue Cross & Blue Shield Plans,* 514 U.S. at 655, 115 S.Ct. 1671. Furthermore, even if the Court did consider such other sources, Defendant would not prevail because the Court does not agree with Defendant's conclusion that examination of § 1341's purpose indicates that Plaintiff's proposed definition of "item" should be rejected.

Defendant also argues: "To the extent that another section of the Code or [ ] the regulations thereunder, provides specific treatment of any item of income, such other provision shall apply notwithstanding section 61 and the regulations thereunder." Def.'s Mot. at 14 (quoting Treas. Reg. § 1.61–1(b)). Defendant bases this argument on its belief that § 1341 provides special treatment to "claim of right income." Def.'s X–Mot. at 15. However, Defendant has presented no support for this construction of § 1341 as a "special treatment" provision. Furthermore, there is no suggestion in § 1341 that would "otherwise provide" that gross income derived from business should not be defined as gross receipts less COGS.

The Court is persuaded by Plaintiff's arguments on this issue. As Plaintiff is in the "manufacturing, merchandising, or mining business," it seems clear that Treasury Reg-ulation § 1.61–3(a) applies and that Plaintiff possessed an "item ... included in gross income" because its COGS was understated, which led to the item of gross income from business being inflated. In addition, even if other sources were examined, "the Supreme Court has long held that when courts are called upon to interpret or apply the definition of gross income in I.R.C. § 61, they must do so broadly." *Grace Lilly,* 76 F.3d at 572 (citing *Comm'r v. Glenshaw Glass Co.,* 348 U.S. 426, 429–30, 432, 75 S.Ct. 473, 99 L.Ed. 483 (1955)).

Both components of this unit of income need to be present for Plaintiff to meet the "item" element of § 1341:(1) gross receipts, and (2) COGS. There does not appear to be a dispute that gross receipts were properly included in income after Quaker State's oil products were sold to its customers. *See* Def.'s Resp. to PPFUF ¶ 3, at 4. However, the parties disagree about whether the settlement payments at issue would have been COGS if they had been paid in the years in which the corresponding gross receipts were earned. *See* Def.'s X–Mot. at 16; Pl.'s Reply at 4.

According to Treasury Regulation § 1.61–3(a), COGS should be determined in accordance with the method of accounting consistently used by the taxpayer. In this case, Plaintiff is an accrual taxpayer. Pl.'s Resp. to DPFUF ¶ 12, at 4. Therefore, under Treasury Regulation § 1.446(b)(2)(c)(ii)(A)-(B), Plaintiff should take COGS into account in computing income for the taxable year in which "all the events have occurred that establish the fact of the liability, the amount of the liability can be determined with reasonable accuracy, and economic performance has occurred with respect to the [COGS]." In the years in which Plaintiff's income was produced, all events had occurred to establish liability, as the oil was bought and used to manufacture oil products; the amount of liability for oil was determined, albeit erroneously low; and economic performance occurred, in that the oil was bought and sold to customers. The Court thus concludes that the settlement payment to Quaker State's oil suppliers was clearly a cost of goods sold, as COGS includes inventory, and inventory in-

cludes all raw materials that physically become part of the merchandise (in this case, oil). Treas. Reg. § 1.471–1; *see also* Pl.'s Reply at A.1; Affidavit of Ronald A. Harvot, Jr. ¶ 3, at 1. Since Quaker State paid less to the Lazy Oil suppliers than it should have during the taxable years 1981–95, Quaker State's COGS was reduced, and its "item" (the unit of gross receipts less COGS) was inflated. Therefore, the Court finds that Plaintiff has satisfied the first element of § 1341.

### 2. Appearance of an Unrestricted Right

■ Second, the "item" discussed above must have been "included in gross income" because "it *appeared* that the taxpayer had an unrestricted right to such item." I.R.C. § 1341 (emphasis added). The Federal Circuit seems to agree with the logic in *McKinney v. United States*, a Fifth Circuit case that interpreted "appearance of an unrestricted right" to mean "the appearance *to the taxpayer* of an unrestricted right." *Culley v. United States*, 222 F.3d 1331, 1335 (Fed.Cir.2000) (emphasis added) (citing *McKinney*, 574 F.2d 1240, 1243 (5th Cir. 1978)). This appearance of an unrestricted right must be based on "all the facts available in the [earlier] year." Treas. Reg. § 1.1341–1(a)(2). As Revenue Ruling 68–153, 1968–1 C.B. 371, 1968 WL 15327 says:

> The term 'appeared' as used in section 1341(a)(1) of the Code and in section 1.1341–1(a)(2) of the regulations refers to a *semblance* of an unrestricted right in the year received as distinguished from an unchallengeable right (which is more than an 'apparent' right) and from absolutely no right at all (which is less than an 'apparent' right).

(emphasis added). Some courts have embraced this distinction between an actual and an apparent right, while others have found that an "apparent right" encompasses an "actual right." For example, *Cinergy Corp. v. United States*, held that a company having an *actual*, instead of an *apparent*, right to an item of income could not utilize § 1341, because historically the claim of right doctrine was only applied where there was a "legiti-mate dispute" as to the taxpayer's entitlement to the item of income. 55 Fed.Cl. 489, 504–07 (2003); *see Taxing Unsettled Income*, 58 Yale L.J. at 960–61 (citing *McDuffie v. United States*, 85 Ct.Cl. 212, 19 F.Supp. 239 (1937), *Brown v. Helvering*, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725 (1934), and others). Alternately, other courts have held that an actual right satisfies the requirement for an apparent right, because, as *Dominion Resources, Inc. v. United States* says, "[t]hings very often 'appear' to be what they 'actually' are." 219 F.3d 359, 364 (4th Cir.2000).

Like the courts, the parties disagree on the meanings of the words "actual" and "apparent." Plaintiff and Defendant seem to agree that the main definitions of "apparent" or "appear" are (1) "in sight," "visible," "plain;" and (2) "to seem or look to be" or "appearing as such but not necessarily so." Supplemental Brief for the United States (hereinafter "Def.'s Second Supp. Br.") at 4; Plaintiff's Second Supplemental Brief (hereinafter "Pl.'s Second Supp. Br.") at 4–5. Defendant, however, distinguishes these definitions from the definition of "actual," which Defendant defines as "existing and not merely potential or possible." Def.'s Second Supp. Br. at 4. Although Defendant is correct that "actual" and "apparent" have different meanings, this is not determinative. The important fact is that the definitions fit together so that an *actual* right can also be *apparent*, regardless of whether an apparent right must also be actual.

Defendant also asserts that a commonly accepted meaning of "apparent" is something that "seems true, but is not." *Id.* at 4–5 (citing *Cinergy*, 55 Fed.Cl. at 501–06). Defendant relies mainly on *Cinergy* and Revenue Ruling 68–153, 1968–1 C.B. 371, neither of which is binding on this Court. Def.'s Second Supp. Br. at 4, 6–9; *W. Coast Gen. Corp. v. Dalton*, 39 F.3d 312, 315 (Fed.Cir. 1994) ("Court of Federal Claims decisions, while persuasive, do not set binding precedent for separate and distinct cases in that court.") (citations omitted); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944) (stating that revenue rulings are not entitled to deference, but are merely entitled to weight according to their

"power to persuade"). Furthermore, even if "seems true, but is not" is one meaning of "apparent," there are many other meanings, and one cannot be certain which one Congress intended to use in § 1341 without examining the statute itself.

Ultimately, the statute itself is ambiguous,[7] and there is no binding case law regarding the actual/apparent dichotomy. This Court therefore must turn to the legislative history of § 1341. *See N.Y. State Conference,* 514 U.S. at 656, 115 S.Ct. 1671 ("We simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ... statute as a guide ...."). The legislative history does provide guidance as to the meaning of the term "apparent" in § 1341. In the House and Senate Committee Reports, the legislature states that § 1341 will apply "[i]f the taxpayer included an item in gross income in one taxable year, and in a *subsequent* taxable year he *becomes* entitled to a deduction because the item or a portion thereof *is no longer* subject to his unrestricted use." H.R. Rep. 83–1337, at A294; S.Rep. No. 83–1662, at 451 (emphasis added). The *Dominion Resources* court interpreted this passage to "strongly suggest[ ] that a taxpayer may enjoy the benefits of § 1341 even if his unrestricted right to use the income did not end until the 'subsequent taxable year.'" 219 F.3d at 365. This Court agrees and therefore finds that an actual right is included in the definition of an apparent right for purposes of § 1341.

Even if the legislative history were ambiguous, Defendant's position would have to be rejected based on the canons of construction advanced by Plaintiff in Part III.C.1., above, despite the fact that they were inappropriate earlier when interpreting the meaning of the unambiguous term "item." *See* Part III.C.1., above. First, as a remedial statute, § 1341 should be interpreted broadly to effectuate congressional goals. *Smith,* 35 F.3d at 1525. Second, any doubts regarding the plain meaning of the statute must be resolved against the government and in favor of the

taxpayer. *Gould,* 245 U.S. at 153, 38 S.Ct. 53. Interpretation through use of these canons is consistent with policy considerations, too:

> Section 1341 is a relief provision.... This would encourage taxpayers to return funds they may have received inappropriately by neutralizing all negative tax impacts of the prior taxation. It should be remembered that Section 1341 is not a tax deduction provision. It does not grant taxpayers a tax benefit for amounts that are not otherwise deductible.

Dominion Resources: *Powering Section 1341 Toward Equity?,* 16 Akron Tax J. 133, 139 (2001) (suggesting an even less restrictive approach than the one used in *Dominion Resources*).

After applying these canons, it becomes clear that the broader interpretation of "apparent" embodied in *Dominion Resources* is more consistent with congressional intent than the historical approach used in *Cinergy.* This Court must respectfully disagree with *Cinergy's* interpretation of "apparent," which is based mainly on the history of the claim of right doctrine, 55 Fed.Cl. at 501–06. First, the word "apparent" was not included in the definition of a claim of right until § 1341 was enacted. *See* n.7, below. Second, although prior practice can be an indication of congressional intent, § 1341 is a remedial statute, which makes it more likely that Congress intended to change the way the claim of right doctrine worked, not keep it the same.

In contrast, *Dominion Resources* uses a broader approach to the definition of "apparent," which is more appropriate for a remedial statute. Further, *Dominion Resources* seems to be supported by decisions of other circuit courts. Specifically, the Fifth and Sixth Circuits have used reasoning parallel to that of *Dominion Resources. See Prince v. United States,* 610 F.2d 350, 352 (5th Cir. 1980) (allowing § 1341 relief where a taxpayer had an actual, not just an apparent, unrestricted right to income provided under a trust); *Van Cleave v. United States,* 718 F.2d 193, 196–97 (6th Cir.1983) (holding that a

---

7. *See* Martin H. Webster, *The Claim of Right Doctrine: 1954 Version,* 10 N.Y.U. Tax L.Rev. 381, 387 (1955) (arguing that the statute's use of

"appeared" is unclear and that the statute should have used "terms already endowed with reasonably definite meaning.").

taxpayer could utilize § 1341, even though he had "more than an *appearance* of an unrestricted right to the excess compensation in the year in which it was received") (emphasis in original).

Nevertheless, Defendant makes three more claims to support its proposed definition of "apparent." First, Defendant argues that other circuit court decisions support the *Cinergy* position. These decisions, however, do not interpret the word "apparent," as used in § 1341, but instead discuss only the *judicial* claim of right doctrine. *See, e.g., Equitable Life Ins. Co. v. United States,* 340 F.2d 9 (8th Cir.1965); *Grandview Mines v. Comm'r,* 32 T.C. 759, 1959 WL 1248 (1959), *aff'd,* 282 F.2d 700 (9th Cir.1960); *see* Def.'s Second Supp. Br. at 4; Pl.'s Second Supp. Br. at 5 n.2. Furthermore, they are not binding on this Court. Second, Defendant cites four Tax Court cases. Def.'s Second Supp. Br. at 4; *see Blanton v. Comm'r,* 46 T.C. 527, 530, 1966 WL 1180 (1966) (no § 1341 relief where corporate director was "never obligated at any time to return any portion of said fees to the corporation"), *aff'd,* 379 F.2d 558 (5th Cir.1967); *Barrett v. Comm'r,* 96 T.C. 713, 718–19, 1991 WL 80644 (1991) (grant of § 1341 relief, where "the taxpayer had a legal obligation to restore the item"); *Pike v. Comm'r,* 44 T.C. 787, 794, 1965 WL 1206 (1965) (no right to § 1341 relief where "[n]o suit had been brought against petitioner ... [and t]here was no judicial determination that the profit belonged to the corporation."); *Usher v. Comm'r* 40 T.C.M. (CCH) 385 (1980), Nos. 141–79, 142–79, 1980 WL 4026 (U.S.Tax Ct.), at *8 (May 21, 1980) (no § 1341 relief where taxpayer received money for an option contract and "the obligation to repay arose as a result of subsequent events"). The Court finds the reasoning in these cases unpersuasive because the cases do not actually interpret the word "apparent"; instead, the cases deal mainly with the establishment, "*after* the close of such prior taxable year (or years)[,] that the taxpayer did not have an unrestricted right to such

item." § 1341(a)(2). Tax Court decisions, of course, are not binding on this Court.

Finally, Defendant argues that Plaintiff's alleged price-fixing means that it could not have believed it had an unrestricted right to the income it earned between 1981 and 1995. Def.'s X–Mot. at 17–18. Its position is buttressed by the Federal Circuit's decision in *Culley,* in which the court held that a plaintiff could not have believed that he had an unrestricted right to income, since the income was gained through an intentional wrongdoing. 222 F.3d at 1335–36. Nevertheless, there is little evidence of wrongdoing in this case. Plaintiff has been neither indicted nor convicted, and Plaintiff asserts that it "believed at the time it made the payments to the independent oil producers that it paid them a fair and honorable sum." Pl.'s Mot. at 16. In fact, in the antitrust settlement, Quaker State did not even admit liability. Def.'s Resp. to PPFUF ¶ 9, at 10. However, Defendant is convinced that Plaintiff had to have known that the income was included as a result of Quaker State's wrongdoing, supporting its position by a statement made by Plaintiff's senior tax counselor at deposition: "[P]laintiff would not have paid 4.4 million if there wasn't liability." Def.'s X–Mot. at B.242; Salek Dep. at 40. This statement, not even made by an officer, is not enough evidence to indicate that Plaintiff was involved in any intentional wrongdoing.

■ Having accepted Plaintiff's definition of "apparent," the Court must determine whether Plaintiff's situation fits within that definition. Since Quaker State took into income the unit of gross receipts from oil product sales less the cost of goods sold, it is clear that Quaker State believed that it had a right to that income. Plaintiff's Proposed Findings of Uncontroverted Fact (hereinafter "PPFUF") ¶ 4, at 2. As a result, the Court concludes that the item of income was included because "it *appeared* that the taxpayer had an unrestricted right to such item." [8]

---

8. Plaintiff also asserts that it is entitled to summary judgment on this issue even if having an actual right precludes use of § 1341. Pl.'s Second Supp. Br. at 7. However, the Court need not

address Plaintiff's argument, as the Court has determined that an actual right meets the "apparent" requirement of § 1341.

### 3. Allowable Deduction

 Section 1341(a)(2) requires that a *"deduction"* be "allowable for the taxable year" because "it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item." (emphasis added). Courts have focused on whether a deduction is allowed and whether the loss of unrestricted right has been established. There are two requirements for a deduction to be allowable for the taxable year under § 1341:(1) the deduction must be permitted because of "the *restoration* to another of an item which was included in the taxpayer's gross income for a prior taxable year (or years) under a claim of right."[9] Treas. Reg. § 1341–1(a)(1) (emphasis added); and (2) the deduction must occur under some provision of the I.R.C. other than § 1341. Treas. Reg. § 1341–1(a)(1); *see also United States v. Skelly Oil Co.*, 394 U.S. 678, 683, 89 S.Ct. 1379, 22 L.Ed.2d 642 (1969); *Griffiths v. United States*, 54 Fed.Cl. 198, 202 (2002).

The first requirement, restoration to another, means "a restoration resulting because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item (or portion thereof)." Treas. Reg. § 1.1341–1(a)(2). Plaintiff argues that it has met this requirement by "restoring" income to the Lazy Oil plaintiffs. Pl.'s Reply at 10. Defendant, however, points out that Plaintiff did not "restore" any income, because, even assuming that there was an item of income (which Defendant does not concede), the income was received from *customers* in the prior taxable years and returned to *suppliers*. Def.'s X–Mot. at 20. Thus, Defendant asserts, the income was not being restored, or returned, to the same entity from which it came. *Id.* However, according to the Treasury Regulations,[10] an item need not be returned to the same entity for the restoration requirement to be met. As a result, the Court finds that at least some of the settlement money was a restoration and that this element has been met with regard to that portion of the settlement payments. Nevertheless, some of the money was not a restoration because it would not have been part of the original "item" of income that Plaintiff received. As Defendant notes, the settlement agreement provided that all costs, expenses, and attorney fees were to be paid from the settlement fund. Defendant's Supplemental Brief (hereinafter "Def.'s Supp. Br.") at 7–8 (citing Def.'s X–Mot. at B.269, Agreement of Settlement Between Plaintiff Class and Quaker State ¶ 7, at 6). Since § 1341 relief is not available for expenses or attorney fees,[11] the Court finds that, as to those sums, Plaintiff cannot reap the benefits of the statute.

The other part of the deduction requirement of § 1341 is that the deduction must occur under some provision of the I.R.C. other than § 1341. *Skelly Oil*, 394 U.S. at 683, 89 S.Ct. 1379. Plaintiff says that both sides agree that the payments made in the later years are deductible, claiming this deductibility under I.R.C. § 162 as an ordinary and necessary business expense.[12] Tr. at 33;

---

9. The requirement of a restoration to another does not appear in § 1341 itself However, reasonable Treasury Regulations, such as the ones mentioned in this opinion, are equally binding on the court. *Suzy's Zoo v. Comm'r*, 273 F.3d 875, 881 n. 7 (9th Cir.2001) ("Treasury regulations are binding so long as they implement congressional mandate in some reasonable manner and are not arbitrary, capricious or manifestly contrary to the Internal Revenue Code."). Furthermore, the title of the statute is "Computation of Tax Where Taxpayer *Restores* Substantial Amount Held Under Claim of Right" and case law supports this restoration requirement. *See, e.g., Bailey v. Comm'r*, 756 F.2d 44, 46 (6th Cir.1985).

10. In the example in Treas. Reg. § 1.1341–1(h), A realizes capital gain by selling his home to B in one year. In that same year, C claims a right to 5% of the purchase price because he brought the parties together. A rejects C's demand, but is forced to pay C in a later year, when judgment is rendered against him. "Section 1341 applies to the payment of the 5–percent share of the purchase price to C," even though the item of income flowed from B to A in the prior year, and not from C to A.

11. Treas. Reg. § 1.1341–1(h); *see Barrett*, 96 T.C. at 722–24.

12. In the transcript, Plaintiff is also recorded as claiming a deduction under the "plaintiffs' right doctrine." Tr. at 33. However, as the Court has never heard of said doctrine, the claimed deduction is being construed as a missed transcription of "claim of right doctrine."

Def.'s X–Mot. at 7 ("Plaintiff is entitled to deduct its ... antitrust settlement payments, and the Government has not denied such deductions.").

Nevertheless, Defendant argues that, if Plaintiff prevails on the "item" requirement of § 1341, it cannot also prevail on the "deduction" requirement, stating: "If the Court were to determine that the antitrust settlement payments were properly included in costs of goods sold for prior years, then the 1995 and 1996 payments should have been deducted by [P]laintiff in those prior years and could not be taken as deductions for the later suit years." Def.'s X–Mot. at 17; *see also* Def.'s Reply at 6–7. What Defendant fails to understand, however, is that Plaintiff can (and does) prevail on the "item" argument without the settlement payments being classified as COGS. The important fact is that Plaintiff's settlement payments to its suppliers would have been COGS if the money had been paid *in the prior years*.[13] As I.R.C. § 162(a) says: "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred ... in carrying on any trade or business ...." Under this statute, Plaintiff's payments to the Lazy Oil plaintiffs would qualify as a deduction, because the settlements were made as a business expense. Furthermore, Defendant makes no argument that Plaintiff is not entitled to a deduction, as long as the settlement payments are not classified as COGS (which is the case here). In fact, as Plaintiff notes, the IRS did not even challenge the deductions when it audited Plaintiff's tax returns for the relevant years. Pl.'s Reply at 11. As a result, the Court finds that Plaintiff has met the allowable deduction requirement of § 1341.

### 4. Lack of Unrestricted Right

▪ The deduction discussed in Part III. C.3., above, must be allowable because "*it was established* after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or portion of such sum." § 1341 (emphasis

added). The two main cases that courts analyze when evaluating this element of § 1341 are *Barrett v. Comm'r*, 96 T.C. 713, 1991 WL 80644 (1991), which examines § 1341 in the context of a settlement agreement, and *Pike v. Comm'r*, 44 T.C. 787, 1965 WL 1206 (1965). These two cases take somewhat differing views on establishment of a lack of an unrestricted right; however, the basic point of law for which they stand is the same.

The parties agree that *Barrett* is relevant to the present case because, if Plaintiff meets this element of § 1341, it will be the result of a settlement agreement. Plaintiff's Supplemental Brief (hereinafter "Pl.'s Supp. Br.") at 3–4; Def.'s Supp. Br. at 3. Plaintiff even says that settlements are "tantamount to judgments for purposes of § 1341(a)(2)." Pl.'s Supp. Br. at 5 (discussing *Skelly Oil*, 394 U.S. 678, 89 S.Ct. 1379 (1969)); *see also* Def.'s Supp. Br. at 3 ("Defendant does not dispute that as a general proposition, a good-faith, non-collusive settlement agreement entered into to terminate litigation may in some cases 'establish' a liability to return income, thereby establishing a lack of an unrestricted right to income for purposes of Section 1341(a)(2)."). However, Defendant views the facts of *Barrett* as distinguishable from the case at bar (although Defendant fails to explain its reasoning). Def.'s Supp. Br. at 4.

In *Barrett*, the taxpayer had included profit from the sale of stock options in one year, and then in a later year, the Securities and Exchange Commission brought administrative proceedings against him on the basis of alleged insider trading. The taxpayer settled the case without admitting liability and claimed that the settlement payment deserved § 1341 treatment. 96 T.C. at 715. *Barrett* held that a settlement made at arm's length and in good faith can satisfy the "establishment" requirement of § 1341, stating:

> As we understand section 1341(a)(2), the provision that the facts establish 'that the taxpayer did not have an unrestricted right' to the item requires a showing that

---

**13.** Plaintiff notes this important distinction by saying: "There is nothing internally inconsistent with allowing a deduction in the year of the Lazy Oil payments even though the amounts *would*

*have been* included in cost of goods sold had they been included at the time the crude oil was manufactured and sold." Pl.'s Reply at 12 (emphasis added).

the taxpayer had a legal obligation to restore the item. *Kappel v. United States,* 437 F.2d 1222, 1226 (3d Cir.1971). Stated another way, 'the payee must have at least the ability to legally compel the repayments before the repayments can be deducted by the payor.' *Berger v. Comm'r,* 37 T.C. 1026, 1032[, 1962 WL 1216] (1962). A voluntary restoration will not suffice. *Id.* at 718–19; *see also Cal–Farm Ins. Co. v. United States,* 647 F.Supp. 1083, 1092 (E.D.Cal.1986) ("The source of the obligation need not be a court judgment; however, there must be a clear showing ... of the taxpayer's liability to repay."). *Barrett* also noted that this result "foster[s] the [legal policy of] peaceful settlement of disputes without litigation." 96 T.C. at 720.

In contrast, *Pike* involved a taxpayer who bought and sold corporate stock in one year, after which an investigator found that the profit from said stock should have gone to the corporation and not the taxpayer. 44 T.C. at 788, 794. The taxpayer then paid the money to the corporation, without admitting that the profits belonged to the corporation, and avoiding controversy so that he did not suffer harm to his professional career. *Id.* at 794–96. The *Pike* court stated that, although "a judicial determination of liability is not required ... it is necessary under section 1341(a)(2) for a taxpayer to demonstrate at least the probably [sic] validity of the adverse claim to the funds repaid." *Id.* at 799; *see also Cal–Farm,* 647 F.Supp. at 1092. The court found that the stated standard was not met in *Pike,* whereupon it held that the taxpayer had failed to show that he was not entitled to keep the profits from sale of the stock and was therefore denied the relief of § 1341. *Id.* at 801.

Although the holdings in *Pike* and *Barrett* are different due to distinguishable facts, the point of law that they stand for is not. The primary distinction is that, in *Pike,* there was no suit against the plaintiff for repayment of money, which makes it more likely that the taxpayer acted voluntarily in paying the money and less likely that the taxpayer can "demonstrate at least the probably [sic] validity of the adverse claim." *Pike,* 44 T.C. at 799. In *Barrett,* the opposite was true. 96 T.C. at 715. The Court finds *Barrett* more persuasive, as the *Barrett* facts more closely match those in the present case. In each case, (1) an actual settlement was made with the plaintiff(s) who had filed suit; (2) the taxpayer denied liability when entering into the settlement; and (3) there was no indication that either settlement was not made at arm's length. As a result, the Court holds that the establishment test has been met.[14]

An alternative way of determining whether the "establishment" requirement has been met is the "same circumstances, terms, and conditions" test. This test requires that "the requisite lack of an unrestricted right to an income item permitting deduction must arise out of the circumstances, terms, and conditions of the original payment of such item to the taxpayer." *Blanton,* 46 T.C. at 530.[15] Defendant argues that the test has not been satisfied, because there is no "substantive nexus" between the purchase of crude oil and the antitrust settlement payments. Def.'s Reply at 7 (citations omitted). However, the Court finds Plaintiff's assertion that the test has been met persuasive. Plaintiff asserts: "[*B*]*ut for* the crude oil purchases, Quaker State would not have been named as a defendant in the Lazy Oil case and would not have agreed to pay an additional amount." Pl.'s Reply at 13 (emphasis in original).

As a result of the above, the Court finds that Plaintiff is entitled to use I.R.C. § 1341 under the test set forth in that statute. Nevertheless, Plaintiff may lose its entitlement to the use of § 1341 if it falls within the inventory exception discussed below.

**D. The Inventory Exception of § 1341(b)(2)**

■ The inventory exception states:
Subsection (a) does not apply to any deduction allowable with respect to an item which was included in gross income *by*

---

14. Consequently, Plaintiff's alternative "origin of the claim" argument need not be addressed. *See* Pl.'s Supp. Br. at 5–7.

15. No case binding on this court has used this test to determine whether the "establishment" element has been met.

*reason of the sale or other disposition of stock in trade* (or other property of a kind which would properly have been included in the inventory of the taxpayer if on hand at the close of the prior taxable year) or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.

§ 1341(b)(2) (emphasis added). This exception to the tax relief available in § 1341(a) is further explained in Treasury Regulation § 1.1341–1(f), which limits the inventory exception "to sales returns and allowances and similar items" that are included in gross income. Since the facts are clear that a deduction for the settlement payments would not be a deduction for sales returns or allowances, the real question the Court must confront is whether the settlement payments are "similar items."

Defendant argues that the inventory exception applies to bar Plaintiff from utilizing § 1341. Def.'s X–Mot. at 25. Defendant's argument is short and seems facially persuasive: "It is . . . undisputed that during 1981 through 1995 plaintiff reported income in part from the sale of products produced from . . . crude oil to customers 'in the ordinary course of [plaintiff's] business.'" *Id.* (quoting § 1341(b)(2)); *see* Def.'s Resp. to PPFUF" ¶ 1, at 2, ¶ 2, at 3, ¶ 3, at 4.

Plaintiff, on the other hand, argues that the inventory exception should be read narrowly. Pl.'s Mot. at 12. Although there must be at least two items *beyond* sales returns and allowances to which the inventory exception applies, the IRS and the courts have tended to limit the inventory exception. *See, e.g., Killeen v. United States,* 63–1 U.S.T.C. 9351 (S.D.Cal.1963). Specifically, Plaintiff asserts, the inventory exception has not been applied to payments made to non-customers. Pl.'s Reply at 15. Additionally, Plaintiff asserts that the inventory exception only applies where former IRC § 462 would have been used.[16] Pl.'s Mot. at 12–13. Plaintiff cites legislative history, reasoning that Congress did not intend for taxpayers to

benefit from use of both § 1341 and § 462. *Id.*

Once again, the statute and Treasury Regulations do not provide a clear answer regarding the meaning of § 1341. As a result, legislative history must again be examined. *See N.Y. State Conference* 514 U.S. at 656, 115 S.Ct. 1671. As Plaintiff notes, the legislative history of § 1341 clearly indicates that Congress did not intend for the inventory exception to apply in cases such as the one at bar. Pl.'s Mot. at 12–13. The Report of the House of Representatives states: "[Section 1341] is specifically made inapplicable to sales of inventory, stock in trade, etc. An accrual basis taxpayer may *instead* estimate sales returns and guaranties in accordance with section 462." H.R.Rep. No. 83–1337, at A294 (emphasis added). Furthermore, the Senate Report says that § 1341 is "inapplicable to refunds, allowances, bad debts, etc., pertaining to sales of inventory or stock in trade *which may be provided for under section 462* relating to reserves." S.Rep. No. 83–1622, at 118 (emphasis added). These two passages evidence a clear congressional intent that the purpose of the exception in § 1341 was to prevent an accrual taxpayer such as Plaintiff from getting the benefit of both § 1341 and § 462. *See also* Maurice Austin *et al., The Internal Revenue Code of 1954: Tax Accounting,* 68 Harv. L.Rev. 257, 279 (1954) ("[R]efunds or allowances by the taxpayer on sales of stock in trade or property held for sale to customers in the ordinary course of business are not covered, but are left to be dealt with by estimated expense reserves for returns, allowances, and guarantees.").

This Court agrees with Plaintiff that the legislative history is helpful in determining the scope of the inventory exception of § 1341(b)(2). The Court also finds the *Killeen* decision illustrative. In that case, the taxpayer overstated his income from the sale of certain inventory because some of the income should have been given to his partner. *Killeen,* 63–1 U.S.T.C. 9351, at 87,884. The court found that the inventory exception

---

**16.** Section 462 provided a remedial scheme for returns and allowances, which permitted the taxpayer to deduct a reasonable estimate for sales

returns and other future obligations to customers. Pl.'s Mot. at 12–13.

was inapplicable, stating that the device the plaintiff had sold "was stock in trade and merchandise inventory ...; however, the restoration ... did not constitute a sales return, allowance, or item similar thereto." *Id.* at 87,885; *see also id.* at 87,887. The court's decision was made in spite of the fact that the device sold "was stock in trade." Similarly, the income received by Plaintiff in the present case was not of a type that would make § 1341(b)(2) applicable to Plaintiff, even though it appears to be a part of Plaintiff's inventory. The item of income simply does not fit into such a category of "sales return, allowance, or item similar thereto." Furthermore, the Court agrees with Plaintiff's assertion that the inventory exception does not apply to income that is restored to someone other than a customer. *See* Pl.'s Reply at 15 (citing James Edward Maule, *Gross Income: Tax Benefit, Claim of Right and Assignment of Income,* 502–2d Tax Management Portfolio (BNA) A–39 (2000) ("The inventory exclusion should not apply to payments made to parties other than the customers from whom payment was originally received ...."); *see also* FSA 200028029, 2000 WL 33116178, FSA 200036006, 2000 WL 33119631 (§ 1341 inapplicable in both cases, where taxpayer restored income to royalty owners instead of purchasers of inventory). Therefore, the Court finds that the inventory exception does not apply to bar Plaintiff from deriving benefit from § 1341.[17]

### IV. *Conclusion*

Plaintiff's claim for tax relief based on its antitrust settlement payments has satisfied all elements of § 1341(a), and Plaintiff is not barred from using that statute by the inventory exception. Therefore, Plaintiff's motion for partial summary judgment is hereby GRANTED, and Defendant's motion for summary judgment regarding the Lazy Oil claim is DENIED.

However, since there is no factual basis for Plaintiff's Black Lung claim, there can be no genuine issue of material fact, and Defendant is entitled to judgment as a matter of law. For this reason, Defendant's Cross-motion for summary judgment regarding the Black Lung claim is GRANTED.

Final judgment shall be entered in an amount to be determined by later proceedings.[18] The parties are instructed to submit a joint status report on or before November 10, 2004, which shall identify and explain the damages to which Plaintiff is entitled. This JSR shall also inform the Court of the progress of other litigation relating to the 1995–96 taxable years.

---

**17.** Plaintiff also argues that the inventory exception only applies to repayments made to *customers.* Pl.'s Mot. at 14–15 (citing *Killeen,* 63–1 U.S.T.C. 9351 (S.D.Cal.1963)). Since this issue has been decided on other grounds, however, the Court chooses not to address Plaintiff's argument.

**18.** Plaintiff seeks an abeyance due to the pendency of other litigation involving some of the same taxable years that are at issue in this case. Tr. at 67–71.